## John Q. Watkins v. Levi Parsons, *et al.*

1. Payment; *Bank Check; Burden of Proof.* Where a party both receives and uses a check, the presumption is that he realizes the full amount thereof, and if thereafter he seeks to recover that amount from the drawer, it is incumbent on him to show that he did in fact fail to realize.

2. ———— Where A. is engaged in doing work under a contract with B., and at the time both parties have funds on deposit in the same bank, and in payment of said work B. draws his check on said bank to the order of A., which A. receives, indorses, and deposits to his own credit, and where B. has at the time standing to his credit on the books of the bank an amount larger than the amount of the check, and where five days thereafter the bank suspends, owing A. on a general balance of account a sum less than two-thirds the amount of the check, and where no testimony is offered showing what transactions if any took place between A. and the bank during those five days, *held*, that A. could not recover the amount of such check, or any portion thereof, from B., even though it appeared that the bank was insolvent at the time of the drawing of the checks, and that B. was aware that it was embarrassed, while A. was wholly ignorant of its condition, and though the proprietor of the bank, while conducting the bank as an individual matter, was also interested as partner in the business of B. on account of which A. was working and the check drawn.

*Error from Wyandotte District Court.*

IT appears by the transcript that Julius Hammerslough and another brought their action to foreclose a mortgage executed by Stephen S. Sharp and others. Such proceedings were had in said action, and new parties made thereto, that an issue came to be joined therein between *John Q. Watkins,* claiming a cause of action in his own behalf, against *Levi Parsons, Francis Skiddy, H. A. Johnson, David Crawford, Jr., August Belmont, Shepard Gandy,* and *Robert S. Stevens,* others of the defendants in said action. *Watkins* claimed as assignee of Sharp, Shaw & Co., who had performed certain work in constructing the U. P. Railroad, S. B., between Junction City and Emporia, under a contract with the "Land Grant Railway and Trust Company," (so-called,) in which said *Parsons, Skiddy* and others, were stockholders. The whole case was referred to N. C., sole referee, before whom a trial was had. The referee made and filed his report, ascertaining and reporting as to the rights and equities of all the parties. So much of said report as relates to the controversy between *Watkins* and *Parsons* and others, is copied in full in the opinion of the court, *infra.* Said report was confirmed by the district court at the March Term 1873, and judgment entered, as recommended by the referee, in favor of *Watkins* for $3,059.41. *Watkins* claimed the additional sum of $25,000, which the referee found had been paid by *Parsons* and others to Sharp, Shaw & Co., before the assignment to *Watkins,* and as to this item or claim *Watkins* appeals, and brings the case here by petition in error.

*Thacher & Stephens,* for plaintiff in error:

The case presents the question as to whether, under the circumstances and facts found by the referee, the check of $25,000 drawn by A. P. Robinson on Hale's bank, and left in the bank by Robinson, and which afterward came to the hands of Sharp, Shaw & Co., was a payment to Sharp, Shaw & Co. of that amount by the Land Grant Railway & Trust

Company. It is true that Sharp, Shaw & Co. indorsed the check, and it was passed to their credit; and they, by their assignee, Watkins, proved up the same in bankruptcy, as a demand against Hale; yet we claim this does not make the check a judgment, under any well-considered adjudication, and that there is a clear current of authority holding such check as simply a cumulative remedy in their hands.

In the first place there is no fact found showing an intention that the delivery of the check should operate as a payment, and there is nothing showing its acceptance as a payment. It was delivered in the absence of Sharp, Shaw & Co., and afterward, at the request of Hale, indorsed by them. It was a check of the co-partnership, upon an individual member of the company, whom that company had made the depositary of its funds. The drawer of the check knew before he drew and delivered it that Hale was embarrassed. The company had actual knowledge of such fact, and Hale himself knew that he was insolvent. The check was for a part of the indebtedness of this insolvent member of the company to his co-partnership. Of the facts of the embarrassment, and of the insolvency, the firm of Sharp, Shaw & Co. were entirely ignorant. The gauze with which the transaction is sought to be covered is very thin. The company use their co-partner, Hale, to draw the funds from New York to pay the bills owing to Sharp, Shaw & Co. by them. They find, (and whether before or after the drafts on New York, drawn through Hale, had been cashed, does not appear,) that Hale is embarrassed, and seek to relieve themselves. They deem expedition of importance, and do not wait for even the presence of Sharp, Shaw & Co., but, in their absence, pass the check for the trifling sum of $25,000 to Hale, who knows he is insolvent, and yet without disclosing or intimating any warning, procures the indorsement of Sharp, Shaw & Co. of the check, and transfers the amount to their credit. What interest Hale had, or now has, in the co-partnership of the Land Grant Railway & Trust Company, or the value of such interest, does not appear, except that he had an interest.

Nor does it appear, except inferentially, whether or not Hale's conduct in getting the indorsement of Sharp, Shaw & Co. to the check, and thus endeavoring to transfer the indebtedness of a failing banker to his own company, to an indebtedness of such a banker to third parties was an endeavor to protect the interest he had in the co-partnership from loss on account of his own failure in the business of a banker. The secresy of Robinson, of Hale, and of the other members of the co-partnership, and their evidently concerted action, show that there must have been some motive actuating Hale, which had a personal advantage to himself of some kind, impelling him to his action. The motives of the other parties are apparent. After the transfer, and Hale's failure, Sharp, Shaw & Co. use their endeavors to save all they can from Hale's estate. They cause the debt to be proven in the bankrupt court, and secure the dividend to apply. They are nowhere chargeable with laches. The Land Grant Railway & Trust Company lose nothing, and can lose nothing by any act of Sharp, Shaw & Co. The check is not that of a third party, but their own upon their co-partner, and no complaint is made that the payees have not been diligent to protect their interest. By their own wrongful act they secured the placing of the check to Sharp, Shaw & Co.'s credit with Hale, secured it to be so placed, with full knowledge that except they themselves pay it, there is to be a loss of part of the amount to Sharp, Shaw & Co. They part with nothing but the check upon an insolvent bank, and with no value excepting such as that check may bring to the payees. Through the efforts of Sharp, Shaw & Co. that value has been secured. They can complain of no bad faith or want of diligence on the part of Sharp, Shaw & Co., or their assignee. The whole matter had its inception in their wrongful act in trying to impose upon Sharp, Shaw & Co. their check upon an insolvent man, and that man their own co-partner and financial agent. Had Sharp, Shaw & Co. taken, and themselves credited the check as payment, (which it is nowhere pretended they did,) yet the drawing

and delivery, in the manner found by the referee, was such a fraudulent concealment of material facts as would have allowed a recovery in an action based upon such fraudulent suppression. And in this accounting, that whole question is raised, for if Sharp, Shaw & Co. could have recovered of the Land Grant Railway & Trust Company for the fraud, the check was no payment. "No right of action can arise out of a fraud," and "No man shall set up his own iniquity as a defense, any more than as a cause of action," are hypotheses that have passed into maxims. And there is another which is near of kin to them, that "no party can create in himself a right against another by his own fraud;" and another, that "a wrongful or fraudulent act shall not be allowed to conduce to the advantage of the party who committed it." It is observable that in this transaction the parties were not bargaining. Sharp, Shaw & Co. were not even present, except to indorse the check which they found had conveniently been placed in Hale's bank for them. Their action was all of a passive nature. They nowhere procured the action of this co-partnership, but it had its whole inception, motive, and action in the Land Grant Railway & Trust Company and its agent. The apparent purpose being to shift Hale's debt to them upon the shoulders of Sharp, Shaw & Co. Applying these maxims to such facts, we submit that without other authority it cannot be done. The referee erred in allowing and crediting the check, but should only have credited the amount Sharp, Shaw & Co., or their assignee, were benefited thereby. And the district court erred in not allowing the exception of Watkins to the report, but should have rendered a proper judgment upon the facts found. (53 Barb., 91; 38 N. Y., 289; 39 N. Y., 325; 6 Robertson, 413; 43 Ill., 372; 3 Lansing, 30; 4 Duer, 129; 2 Pars. Contr., 622, 625; 10 Peters, 567; 1 Clifford, 63; 24 Pick., 21; 53 Ill., 307.)

On a balance struck between Sharp, Shaw & Co. and the bank, as of the day of Hale's failure, there was only the sum of $15,289.26 of the check of $25,000 their due. The facts

found show no other transaction or payment, after the crediting of the check; and after passing such check to their credit, there remained the above balance, August 17th, 1869. Upon this has been paid by Hale's assignee, the sum of $2,388.50, in June, 1872, leaving a balance, computing interest, (as should manifestly be done, at the date of the referee's report,) of $16,736.67 over and above the amount found to be due to plaintiff in error by said referee. We ask that the judgment may be so modified that we may recover said sum of $16,736.67, in addition to the $3,059.41 allowed by the referee.

*T. C. Sears*, and *C. B. Mason*, for defendants in error:

1. The effect of the decision of this court, in the case of the *Land Grant Railway & Trust Company v. The Board of Commissioners of Coffey Co.*, 6 Kas., 245, deprives the first mentioned party of any corporate rights. As a consequence, the respective rights of the individuals composing the said Trust Company are reduced to novel and anomalous positions. In good faith, we assume, they undertook the enterprises which they have so commendably carried out, referred to by this court, (6 Kas., 252,) and expected and intended in like good faith to be entitled to the rights, and subject to the liabilities of a corporation. By application of law they are divested of any such status, and the rights and liabilities of the stockholders remain to be adjudicated unless they plainly fall within the purview of other relations which are defined by law. It is unnecessary to pursue this subject further, however, than to conclude that the most rigid rule to be applied to the existing rights and obligations of the individuals comprising the attempted corporation, should be that which attaches to partners in business. If any reason can be advanced by the plaintiff in error, respecting the obligations of the defendants, for the payment of the sum claimed, it must flow from the peculiar business relation of the defendants and Hale, at the time the liability is claimed to occur; and the intimate relations of partners in business must, in itself, create the foundation on which they predicate their claim. It cannot

be claimed upon the ground of fraud, or collusion of Hale and defendants, in the case, for no such fact is put in issue by the pleadings, and no such finding appears in the record.

It is entirely competent for one partner to borrow money or to buy goods, or to enter into contract, on his sole and exclusive credit with third persons, and on the other hand it is equally competent for them to rely on that exclusive credit, and either to refuse to contract with the firm, or to exonerate the firm from all liability upon any contract which would otherwise bind the firm as being for their account and benefit. (Story Partnership, § 134.) To any transactions not relating to the partnership business, although made by Hale in the name of the partnership, the partners would not be bound, except by express assent; partners cannot be bound by implication. (10 Wend. 464; 15 Pick., 290.) Again, "if a person contract with an individual partner in a matter unconnected with the partnership business, the firm will not be bound. (Collyer on Part., § 483, note 3.) We cite these general principles for the purpose of showing that the connection of Hale and the defendants in business as partners, draws to it no implied liability, and therefore such relations of business establish no other rule in this case than that to be applied to strangers having equal knowledge.

2. We proceed then to examine the question, how far a liability attaches, if a debtor silently delivers his check to his creditor, and knowing at the time the drawee of the check to be "in embarrassed circumstances?" Just what condition this unhappy state of facts consists of, we are left in uncertainty, and consequently a mere knowledge of that condition is difficult to define. The term "insolvency" has a technical signification, about which there can be no discussion. It is a condition which if known to the makers of the check, would fix the liabilities upon them, unless by acts the payee waived or lost his rights, after receiving the check. But mere "embarrassment" is no legal term, and has no legal signification. A man may be embarrassed to-day and unembarrassed tomorrow. The word taken in its ordinary meaning concerning

financial affairs does not have any definite description of condition, but the term insolvency bears a precision of condition to which the law attaches a character. Nor are we able to determine what notice the defendants had of the embarrassment referred to, whether mere rumor, or otherwise. The presumption is, that the decision is correct, and we confidently insist that the finding of the referee justifies no argument charging a knowledge of insolvency on the part of the defendants.

"An action does not lie against the drawer of the check until he has notice of the presentment and non-payment of the check." (21 Wend., 37.) We claim that the circumstances here are equivalent in law to a presentment and payment of the check. In the first place, at the time of the transaction, the defendants had standing to their credit on the books in said bank, a sum more than sufficient to pay said check, and secondly, a portion of that balance sufficient in amount was appropriated to pay the check of $25,000, and that, too, under the direction of the payee of the check. If the sum of $25,000 had been paid in money, when the check was presented, and the money redeposited immediately by the payee, assuredly the plaintiff would admit the discharge of the drawers. What is the effect, however, of the failure to withdraw the funds, and instead the transfer on the books of the bank, as shown by the facts? "A check is always supposed to be drawn against funds, and there is much authority for holding it to be, in some respects, an appropriation of those funds. The funds cannot properly be withdrawn by the drawer." (2 Parsons Notes, 59, note *i;* 2 Seld., 412; 1 Gray, 605.) If a bill or check is sent to the drawee to be passed to the credit of the sender, and is so credited, the bill or check is discharged, and can no longer be negotiable. (5 Pick., 83.) "But insolvency of the drawer is almost the only case in which the drawer is a loser, so that he is discharged on a check." (4 Duer, 122.) Hale being the banker of both the drawer and holder of the check, received it as the

28—13 KAS.

agent of the holder, and not of the drawer. 2 Parsons Notes, 77, note *u.*

The law imposes upon the holder of a check certain obligations, if he would have recourse against the drawer. He must present it within a *reasonable time.* This check was presented and *paid.* It is not true (see referee's findings,) that the check was indorsed by S. S. & Co., "at Hale's request." S. S. & Co., kept their accounts with Hale. This transaction was precisely like those of the previous months. The exhibit attached to the record shows that the estimates for May and June were deposited about the same time in the month as this. Now, S. S. & Co., drew at least $10,000 of this check; and for all that appears may have drawn out $25,000 after the deposit. Indeed there is nothing to show but that they could have drawn out every dollar before Hale closed his doors. How much S. S. & Co. had to their credit when this $25,000 was deposited does not appear. There may have been $10,000, $20,000 or $30,000. The referee does not even pretend that this amount of $15,289.26 was the *balance due upon their check.* On the contrary he distinctly says, this was the balance due on their "*said bank account,*" viz., their general account. To make defendants in error liable upon such a state of facts is going much further than has ever before been claimed.

3. The election of the assignee, Watkins, to pursue the estate of the bankrupt Hale, (without discussing the effect of such acts and declarations upon his rights,) certainly leaves the claim where it would at present be error to find otherwise than as reported by the referee, because Watkins proved up the claim with interest to the date of filing the petition in bankruptcy against Hale, and received, in June, 1872, of said estate $2,388.50; and while the estate is not settled this court is asked to adjudge him $16,736.67, being the balance upon deducting the payment above mentioned. He must show in any event the funds of Hale exhausted, even if he could maintain his suit, and hold the defendants, the drawers of the check, liable.

The opinion of the court was delivered by

BREWER, J.: This is a proceeding to reverse the judgment of the district court of Wyandotte county, based upon the report of a referee. Before us are the pleadings, the findings and conclusions of the referee, and the judgment. The testimony is not preserved. The following quotation from the report of the referee presents all the facts bearing upon the question raised and discussed by counsel:

"And I further find that at the same time I tried the issues between the several defendants herein, and took an account between the said Thomas A. Shaw, Stephen S. Sharp and Louis Hammerslaugh, constituting the firm of Sharp, Shaw & Co., and the said Levi Parsons, Francis Skiddy, H. A. Johnson, David Crawford, Jr., August Belmont, Shepard Gandy and Robert S. Stevens, partners under the style of the Land Grant Railway & Trust Company, as to all matters of account put in issue between them herein. And I find that before the commencement of this action, the said account of Sharp, Shaw & Co., was assigned to, and all title thereto vested in, the defendant John Q. Watkins, and on said account I find due to said Watkins, as assignee of said Sharp, Shaw & Co., $3,059.41. And I find that the said Watkins is entitled to judgment against the said defendants Parsons, Skiddy, Johnson, Crawford, Belmont, Gandy and Stevens, for the said sum of $3,059.41, with interest from the date of this report at seven per cent. per annum, and costs, as hereinafter stated.

"And I further find as facts in this cause, that the charge of $25,000 made by said Land Grant Railway & Trust Company, and dated August 12th, 1869, (appearing upon schedule 'A,' hereto attached,) was for a check drawn by said Land Grant Railway & Trust Company, by their agent, A. P. Robinson, upon the bank of Hiram F. Hale, by the name of Hale & Rice, bankers, (that being the name in which said Hale did business as a banker, and the bank being solely the bank of said Hale,) payable to Sharp, Shaw & Co., or order; that said Hale then owned an interest in the co-partnership called the Land Grant Railway & Trust Company, but kept said bank on his sole account, as his individual business; that said Land Grant Railway & Trust Company were keeping funds in said bank by drawing drafts on New York in its

favor, and delivering the same to said bank, and were making monthly payments for work to Sharp, Shaw & Co., by drawing checks upon said bank; that Sharp, Shaw & Co. at the same time kept their funds in said bank; that on the 12th of August, 1869, the said A. P. Robinson as such agent drew a check on said bank for $25,000, payable to Sharp, Shaw & Co., or order, and placed the same in said bank for Sharp, Shaw & Co., who soon after took the same and indorsed it, and caused the amount thereof to be placed to their credit on the books of the bank; that at the time said check was deposited by said Robinson, and indorsed by said Sharp, Shaw & Co., and placed to their credit, said Hale was insolvent, and afterward, and on or about the 17th of the same month, stopped business as a banker; that at the time he so stopped business, he was indebted to said Sharp, Shaw & Co. on their said bank account, in the sum of $15,289.26; that at the time said check was made and deposited in Hale's bank, and when the same was indorsed by Sharp, Shaw & Co., and credited to them on the books of the bank, said Hale had knowledge of his insolvency, and at the same time the said Land Grant Railway & Trust Company, and A. P. Robinson, their agent, had notice that he was embarrassed in his finances, and said Sharp, Shaw & Co. had no such knowledge or notice; that at the time said check of $25,000 was so drawn, delivered, indorsed, and credited to Sharp, Shaw & Co. said Land Grant Railway & Trust Company had a balance in their favor, owing by said Hale to them, standing to their credit upon the books of the bank, more than sufficient in amount to pay the said check of $25,000; that afterward, the said Hale having been adjudged a bankrupt in the United States District Court, for the District of Kansas, the defendant Watkins, after the assignment of the said demand to him, proved up in said court, as assignee of said Sharp, Shaw & Co., and as a debt due from said Hale to said Sharp, Shaw & Co., the balance of bank account so due from said Hale to them, including said check of $25,000, as credit to them, and the same was so proved up and established at the amount of $19,-107.96, including interest to the time of filing the petition in bankruptcy; that afterward, in June 1872, the said Watkins received on said debt, as a dividend of assets of bankruptcy, the sum of $2,388.50, said bankrupt's estate not having then been fully settled.

"And I further report that I allowed said check of $25,-

000 as a payment by said Land Grant Railway & Trust Company to Sharp, Shaw & Co., in stating said accounts. I append hereto a schedule marked 'A,' of the accounts, both debit and credit, as kept by the Land Grant Railway & Trust Company, passed upon by me, with such charges as were rejected by me, marked 'Rejected' in the margin, all the other items of the account having been allowed, which schedule is a part of this report. And I further find that the plaintiffs are entitled to recover from the defendants Shaw and Sharp the costs of recovering judgment upon the note and mortgage in their favor, and the defendant Watkins is entitled to recover the costs of stating the account and recovering the judgment in his favor. All which is respectfully submitted. "Jauuary 2, 1873.          NELSON COBB, *Referee.*"

We think the referee was right in his conclusions, and that the judgment must be affirmed. The authorities cited by the learned counsel for plaintiff in error are not in point. Under what circumstances the receipt of a check operates as payment, is a question of wide limit, but one into which it is not necessary in this case to enter. For here the check was both received and used, and for aught that appears in the record the entire amount of money it called for also received and used. The check was drawn on the 12th of August, was received by the payees, deposited in Hale's bank, and the amount passed to their credit. It nowhere appears what transaction took place, during the ensuing five days prior to the suspension of the bank, between the bank and Sharp, Shaw & Co. Many times the amount of this check may have been drawn and used by them. The bank continued in business, and we must presume honored and paid checks as presented. Evidently there were some transactions, for while the amount of the check was $25,000, the balance due Sharp, Shaw & Co. at the time of suspension was less than $16,000. If Robinson, instead of leaving the check for Sharp, Shaw & Co., had drawn the money and given it to them, and they had then deposited it in the bank, or if they on receipt of the check had themselves drawn the money, and then deposited it, there would be no question as to the payment. No more can there be if after depositing the check to their credit they drew the amount

thereof out on their own checks. Indeed, by the deposit of the check to their credit, the latter had performed its office, and had become a dead instrument. They had elected to take the bank as their debtor, rather than the defendants in error; and even if there were no subsequent transactions betwen them and the bank it might well be questioned whether they could recover of the drawers. Certainly they could not without proof of the actual loss. And where a party both receives and uses a check, the presumption is that he realized the full amount thereof, and if thereafter he seeks to recover the amount from the drawers, it is incumbent on him to show that he did in fact fail to realize.

This appearing to us as a fatal objection to the plaintiff's right of recovery, it is unnecessary to consider the other questions discussed. The judgment will be affirmed.

All the Justices concurring.